UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

BENJAMIN EDMONDSON,

        Plaintiff,

v.

ROMULUS COMMUNITY SCHOOL
DISTRICT, and in their individual
and official capacities,
DEBI PYLES, JUDY
KENNARD, SUSAN EVITTS,
and NICHOLE GERMAN,

        Defendants.

Case No.
Hon.

---

Nicholas Roumel (P37056)
Amanda M. Ghannam (P83065)
Nacht, Roumel, & Hurwitz, P.C.
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
734-663-7550
nroumel@nachtlaw.com
aghannam@nachtlaw.com
Attorneys for Plaintiff

---

There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in the complaint.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Dr. Benjamin Edmondson, states his complaint as follows:

## INTRODUCTION

This case arises out of Defendants' sustained campaign of harassment against seasoned educator Dr. Benjamin Edmondson. Dr. Edmondson, who is Black, joined the Romulus Community School District as the Superintendent in August 2020. The entire duration of his employment with the District has been plagued with problems, culminating in Defendants' most egregious act: a highly publicized and contentious vote to place Dr. Edmondson on administrative leave – without notice or any opportunity to be heard – just days after he "blew the whistle" and reported his concerns about a potential violation of the Michigan Open Meetings Act. As of the date of this filing, Dr. Edmondson remains on an illegitimate and indefinite leave of absence that has been covered in-depth by local media. Moreover, the Board has brought in a lesser qualified non-Black replacement to fill his position at a higher rate of pay. As a result of Defendants' conduct, Dr. Edmondson has suffered significant reputational harm within the close-knit community of Michigan educators.

## Parties, Jurisdiction, and Venue

1. Plaintiff, Dr. Benjamin Edmondson, ("Dr. Edmondson") is a resident of Dundee, Michigan and an employee of Defendants.

2. Defendant, Romulus Community School District, is a Michigan public school district pursuant to the School Code of 1976, M.C.L. 380.1 *et seq.*, with principal offices at 36540 Grant Road, Romulus, Michigan.

3. Defendant Debi Pyles is or was at all relevant times a member of the Board of Education of the Romulus Community School District. On information and belief, she is a resident of Romulus, Michigan.

4. Defendant Judy Kennard is or was at all relevant times a member of the Board of Education of the Romulus Community School District. On information and belief, she is a resident of Romulus, Michigan.

5. Defendant Susan Evitts is or was at all relevant times a member of the Board of Education of the Romulus Community School District. On information and belief, she is a resident of Romulus, Michigan.

6. Defendant Nichole German is or was at all relevant times a member of the Board of Education of the Romulus Community School District. On information and belief, she is a resident of Romulus, Michigan.

7. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. 1983 and 28 U.S.C. 1331 (federal question) and 28 U.S.C. 1343 (civil rights jurisdiction).

8. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. 1391 as the events giving rise to Plaintiff's claims occurred in the Eastern District of Michigan.

**General Allegations**

9. Dr. Edmondson began his employment with the Romulus Community School District ("the District") as Superintendent in August of 2020.

10. Dr. Edmondson is Black/African-American.

11. Dr. Edmondson holds both a Master and Doctoral degree in education.

12. Dr. Edmondson has years of experience serving as a superintendent in other Southeast Michigan school districts.

13. Dr. Edmondson and the Board of Education of Romulus Community Schools entered into a three-year employment contract.

14. Almost immediately upon the beginning of Dr. Edmondson's employment, several members of the Romulus Community School District Board of Education, primarily the individually named defendants, began to create problems for Dr. Edmondson, pushing back on decisions within his discretion as Superintendent, interfering with his ability to perform his job and improve the school district, and causing multiple District administrators and employees to quit.

15. For example, the Interim Finance Director, Executive Director of K-12 Instruction, Director of Human Resources, and the payroll supervisor

(administrative assistant to the Director of Special Services) all resigned within a short period of time, citing problems with the Board and specifically the four individually named Defendants.

16. In June 2021, Dr. Edmondson took a six-week medical leave for heart surgery.

17. On August 2, 2021, Dr. Edmondson returned to work.

18. Upon his return, Dr. Edmondson found that the Board of Education had voted 4-0 (the four votes coming from the individually named defendants) to hire a company, Dixon Public Consulting ("Dixon"), to investigate the District's finances.

19. The Board instructed Dixon to bypass Dr. Edmondson and report directly to them.

20. The Board ignored Dr. Edmondson's requests for input into these decisions.

21. On August 23, 2021, the Board voted to place a formal letter of reprimand into Dr. Edmondson's file after accusing him of a litany of allegations, including that he failed to provide a key fob to Dixon's employees or perform background checks on them; that he "engaged in defiant behavior" towards the Board president, Ms. Pyles; and that he improperly sent emails regarding pay raises for custodians.

22. During the open session of the Board's meeting of that date, four charges were alleged. The Board's counsel conceded that none rose to the level of stating a legal concern, and that there would be no investigation on those charges.

23. However, as of the date of this filing, Dr. Edmondson has yet to see a copy of the formal letter of reprimand.

24. On September 20, 2021, Dr. Edmondson reported a concern about a potential violation of the Michigan Open Meetings Act, M.C.L. 15.269, to the Board via email.

25. Dr. Edmondson stated:

As the Board is aware MCL15.269 of the Open Meetings Act requires that all minutes of any meetings be available for inspection 8 business days after the meeting and further, approved minutes within 5 business days after the meeting at which the minutes are approved by the public body. I am requesting to review a copy of the minutes of all meetings (Board meetings and Committee meetings) from June 15, 2021 to August 23, 2021 by Tuesday September 23, 2021. I request to review the minutes of the September 13, 2021 Board of Education meeting on September 24, 2021. Please recall that this is State law to which we must all be compliant. I will review all of these minutes at 36540 Grant Road. Your compliance will allow me to ensure I am following all of the formal Board Motions, as expected. Not having access to all of those approved motions in a timely manner has made it difficult to understand and comply with recent mandates and directives.

MCL 15.269 does provide, among other things, that:

1) Each public body shall keep minutes of each meeting…

2) Minutes are public records open to public inspection, and a public body shall make the minutes available at the address designated on posted public notices pursuant to section 4. The public body shall

      make copies of the minutes available to the public at the reasonable estimated cost for printing and copying.

3) A public body shall make proposed minutes available for public inspection within 8 business days after the meeting to which the minutes refer. The public body shall make approved minutes available for public inspection within 5 business days after the meeting at which the minutes are approved by the public body.

26. Board Secretary Susan Evitts had not provided any meeting minutes since July 28, 2021.

27. Dr. Edmondson also forwarded his concern to Attorney Robert Schindler.

28. Dr. Edmondson stated:

Please be informed that I sent this email to our Board of Directors earlier this week. At this time our board is in violation of MCL15.269 of the Open Meetings Act requiring that all minutes of any board meeting be available for inspection 8 business days after the meeting and further, approved minutes within 5 business days after the meeting at which the minutes are approved by the public body…. Though this may not appear to be whistle blowing, I am actually coming to your firm to voice my complaint and concern. I am done with this nonsense and legally we are violating the law.

29. On September 27, 2021, the four individual Defendants voted to place Dr. Edmondson on administrative leave.

30. The Board purported that its decision was based upon findings by Dixon Public Consulting pertaining to the operations of the District's Finance Department – issues that were not directly related to Dr. Edmondson's role as Superintendent.

7

31. The Board stated that Dr. Edmondson would be on an indefinite leave "pending a full investigation" performed by attorneys from the law firm Clark Hill.

32. The findings of the Dixon investigation were not shared with Dr. Edmondson prior to the Board placing him on leave.

33. Dixon's employees never formally interviewed Dr. Edmondson.

34. Dr. Edmondson had had only one informal conversation with Dixon employees, in which he was invited to casually share his thoughts on the District's finance department.

35. The Board's decision to place Dr. Edmondson on leave was highly publicized in local media and caused intense division among the Romulus community.

36. Defendants replaced Dr. Edmondson with a lesser qualified, non-minority employee.

37. Defendants are, as of the date of this filing, paying Dr. Edmondson's replacement at a rate that is higher than Dr. Edmondson's rate of pay.

38. On October 11, 2021, Clark Hill issued an Interim Investigation Report.

39. The Interim Investigation Report did not implicate Dr. Edmondson in wrongdoing.

40. However, Dr. Edmondson remained on an indefinite leave.

41. On November 10, 2021, the Board publicly posted Clark Hill's Investigation Report, Conclusions, and Recommendations[1].

42. The Investigation Report did not implicate Dr. Edmondson in wrongdoing.

43. Rather, the Report discussed issues with other employees and the District's operations and finances generally.

44. However, Dr. Edmondson remained on an indefinite leave.

45. Meanwhile, Defendant Debi Pyles publicly stated that Dr. Edmondson was "not under investigation."

46. Despite this statement and the lack of reason to keep Dr. Edmondson away from work, the Board kept Dr. Edmondson on leave.

47. After the issuance of the Investigation Report, the Board, through Clark Hill, commenced yet another investigation.

48. The Board purported that "new information" had come to light during the first investigation that necessitated keeping Dr. Edmondson on leave.

49. As of the date of this filing, the "new information" has not been shared with Dr. Edmondson.

50. As of the date of this filing, Dr. Edmondson has not been interviewed as part of the investigation.

---

[1] https://www.romulusk12.org/news/investigation-report-of-november-8-2021

51. To date, Dr. Edmondson has received little to no communication from Defendants regarding the status of his employment and has no idea when – or if – he might expect to return to work.

52. As of the date of this filing, Dr. Edmondson has been on an indefinite and involuntary leave of absence, with no end in sight, for nearly four months.

53. Meanwhile, Dr. Edmondson's leave was highly publicized in local media.

54. As a result, Dr. Edmondson has suffered significant reputational harm that has negatively impacted his ability to find another job.

55. As of the date of this filing, Dr. Edmondson has diligently attempted to apply for other jobs, but has been unable to even reach the interview stage.

56. Dr. Edmondson will also likely receive a negative performance evaluation due to his four-months-long-and-counting involuntary absence, which will negatively impact his compensation and further impact his ability to find another job.

**COUNT I**
Violation of the Michigan Whistleblower Protection Act
M.C.L. 15.361 et seq.

57. At all relevant times, Plaintiff was an employee and Defendants were employers covered by and within the meaning of the Whistleblower Protection Act, M.C.L .15.361(a) and(b).

58. Defendant Romulus School District is liable for the actions of its managers, supervisors, and other agents, including the individual defendants named herein.

59. Defendant is a public body covered by and within the meaning of the Whistleblower Protection Act, M.C.L. 15.361(d).

60. Plaintiff engaged in activity protected by the Whistleblower Protection Act, i.e., he reported a violation of law to a public body, including but not limited to his concerns about Open Meetings Act violations as set forth in paragraph 25, as well as a letter from undersigned counsel to Defendants' counsel, which on information and belief was shared with Defendants, generally restating those allegations and threatening potential litigation.

61. In *Burlington Northern and Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006), the U.S. Supreme Court defined a "materially adverse" action, for purposes of employment discrimination law, as an action "that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."

62. The Michigan Court of Appeals has adopted the logic of *Burlington* in its analysis of employment retaliation cases, *see White v. Dep't of Transportation,* 334 Mich. App. 98, 120, 964 N.W.2d 88, 99 (2020) (adopting *Burlington;* also citing *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 596 (6th Cir. 2007) for the proposition that a paid administrative leave can meet the "relatively low bar" for a

materially adverse action in a retaliation claim); *Hall v. City of Dearborn*, No. 20-10198, 2021 WL 4864219, at *12 (E.D. Mich. Oct. 19, 2021) (holding that employer's action was materially adverse where "[s]uch an action, if true, would be "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers", *citing Halfacre v. Home Depot*, 221 F. App'x 424, 432 (6th Cir. 2007)).

63. District courts within this judicial district have also held that being placed on an indefinite administrative leave is a materially adverse employment action, see, e.g., Johnson v. Potter, No. 07-2665-STA, 2009 WL 1974588, at *3 (W.D. Tenn. July 9, 2009) ("being placed on indefinite administrative leave which ultimately lasted for almost eight months is a materially adverse employment action and might dissuade a reasonable worker from making a charge of discrimination"); *Kulick v. Ethicon Endo-Surgery, Inc.,* 803 F. Supp. 2d 781, 786 (S.D. Ohio 2011) (holding that an indefinite leave, even with full pay and benefits, "could constitute an adverse action should it extend beyond a reasonable time".)

64. Defendants subjected Plaintiff to adverse employment actions, including but not limited to, placing Plaintiff on an indefinite leave of absence, which is adverse to his ability to perform his job, adverse to his ability to advance his career, adverse to his compensation, and essentially punitive.

12

65. Defendants' actions towards Plaintiff would dissuade a reasonable worker from making or supporting a complaint or report of a violation of law.

66. Defendants' actions were motivated by Plaintiff's protected activity, e.g., reporting a violation of law to a public body.

67. But for Plaintiff's protected activity, Defendants would not have taken such adverse actions.

68. Defendants have taken adverse employment actions against Plaintiff because he reported a violation of Michigan law to a public body in violation of M.C.L. 15.362.

69. As a result of Defendants' conduct, Plaintiff has suffered damages as described herein.

## COUNT II
Race Discrimination in Violation of the Elliott-Larsen Civil Rights Act
M.C.L. 37.2201 *et seq.*

70. At all relevant times, Plaintiff was an employee and Defendants were employers covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 *et seq.*

71. Plaintiff was qualified for his position as Superintendent of Romulus Community School District.

72. Defendant, Romulus School District, is liable for the actions of its managers, supervisors, and other agents, including the individual defendants named herein.

73. Plaintiff is a member of a protected class because of his race (he is Black/African-American).

74. In *Burlington Northern and Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006), the U.S. Supreme Court defined a "materially adverse" action, for purposes of employment discrimination law, as an action "that might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."

75. The Michigan Court of Appeals has adopted *Burlington* in its analysis of employment discrimination cases, *see White v. Dep't of Transportation,* 334 Mich. App. 98, 120, 964 N.W.2d 88, 99 (2020; *Hall v. City of Dearborn*, No. 20-10198, 2021 WL 4864219, at *12 (E.D. Mich. Oct. 19, 2021) (holding that employer's action was materially adverse where "[s]uch an action, if true, would be "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers", *citing Halfacre v. Home Depot*, 221 F. App'x 424, 432 (6th Cir. 2007)).

76. District courts within this judicial district have also held that being placed on an indefinite administrative leave is a materially adverse employment action, *see, e.g., Johnson v. Potter*, No. 07-2665-STA, 2009 WL 1974588, at *3

(W.D. Tenn. July 9, 2009) ("being placed on indefinite administrative leave which ultimately lasted for almost eight months is a materially adverse employment action and might dissuade a reasonable worker from making a charge of discrimination"); *Kulick v. Ethicon Endo-Surgery, Inc*., 803 F. Supp. 2d 781, 786 (S.D. Ohio 2011) (holding that an indefinite leave, even with full pay and benefits, "could constitute an adverse action should it extend beyond a reasonable time".)

77. Defendants subjected Plaintiff to adverse employment actions, including but not limited to, placing Plaintiff on an indefinite leave of absence, scheduling a meeting for December 20, 2021 to issue draft charges on Dr. Edmondson's termination, and as otherwise stated in the "Damages" section below.

78. Defendants' actions towards Plaintiff would dissuade a reasonable employee from making or supporting a charge of discrimination.

79. Defendants' actions were motivated by Plaintiff's race, as well as his opposition to race discrimination and in undersigned counsel's letter of November 5 to Defendants' counsel.

80. But for Plaintiff's race and/or his opposition to race discrimination, Defendants would not have taken such adverse actions.

81. Defendants replaced Plaintiff with a non-Black/African-American employee.

82. Moreover, three of four Black staff members in the central office have resigned citing board interference, and all of the consultants recently hired to assume their duties are non-Black/African-American.

## COUNT III
Denial of Due Process
42 U.S.C. 1983/Fourteenth Amendment to the U.S. Constitution

83. At all relevant times, Plaintiff had clearly established constitutionally protected rights in his continued employment with Defendants pursuant to the terms of his employment contract.

84. Defendants deprived Plaintiff of his clearly established rights by subjecting him to materially adverse employment actions, including but not limited to placing him on an indefinite administrative leave, which as discussed above can constitute a materially adverse employment action, without notice or an opportunity to be heard, while failing to complete a timely investigation, and failing to interview Dr. Edmondson during the investigations that Defendants plan to use against him.

85. Defendants stigmatized Plaintiff in his reputation, good name, honor, and integrity by subjecting him to such adverse employment actions before providing notice and the opportunity to be heard and otherwise as alleged above.

86. Defendants' publicly-known unlawful actions have stigmatized Plaintiff, leading to loss of his reputation, good name, honor, and integrity.

87. At all relevant times, Defendants were acting under color of state law.

88. At all relevant times, the individual Defendants, in their individual and official capacities, was executing official Board of Education policy by making edicts or acts depriving Plaintiff of his constitutional rights.

89. Accordingly, Defendants are liable to Plaintiff pursuant to 42 USC § 1983 for their deprivation of Plaintiff's constitutional rights, and damaging him as alleged herein and below.

## Damages

90. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

   a. an actual loss of earnings, in that Defendants have failed to pay his contractual annuity which equals approximately 8% of his annual income;

   b. an impairment of his earning capacity and ability to work;

   c. reputational harm, emotional distress, mental and physical anguish, humiliation, and embarrassment, now and into the future.

## Jury Demand

Plaintiff hereby demands a trial by jury on the above causes of action.

## Relief Requested

*W H E R E F O R E* , Plaintiff requests that this Honorable Court grant the following relief:

A. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Michigan Whistleblower Protection Act, and the Elliott-Larsen Civil Rights Act;

B. Award Plaintiff appropriate equitable relief;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff exemplary damages;

E. Award Plaintiff reasonable attorney fees, costs, and interests; and

F. Award such other relief as this Court deems just and proper.

Respectfully submitted,

**Nacht, Roumel, & Hurwitz, P.C.**
Attorneys for Plaintiff

*/s/ Nicholas Roumel*
*/s/ Amanda M. Ghannam*

Nicholas Roumel (P37056)
Amanda M. Ghannam (P83065)

December 19, 2021